# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4054 | DATE | JUN 21 2001 |
| CASE TITLE | Donald Ladenberger vs. General Signal Pump/Aurora Pump | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, GSPG's motion for summary judgment [Doc. #16-1] against Ladenberger's allegations employment discrimination on the basis of age, in violation of the ADEA, is GRANTED and the Ladenberger's motion for summary judgment [Doc.#14-1] is DENIED as to Count I of the defendant's counterclaims alleging breach of duty of loyalty and GRANTED as to Count II of the defendant's counterclaims, alleging fraud. Time to submit Final Pretrial Order is extended to and including July 10, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 22 2001 | |
| X | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 4/4 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 JUN 21 PM 5:06 | date mailed notice | |
| vg(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Donald Ladenberger | ) | JUN 2 2 2001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 4054 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| General Signal Pump Group/Aurora Pump, | ) | Magistrate Judge Ashman |
| a division of General Signal Corporation, | ) | |
| | ) | |
| Defendant. | ) | JUN 2 2 2001 |

## MEMORANDUM OPINION AND ORDER

Before this court is defendant's, General Signal Pump Group/Aurora Pump, a division of General Signal Corporation ("GSPG"), motion for summary judgment against plaintiff Donald Ladenberger's ("Ladenberger") complaint, alleging discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). Simultaneously before this court is plaintiff's motion for summary judgment against GSPG's counterclaims, alleging breach of loyalty and fraud. For the following reasons, the GSPG's motion for summary judgment against Ladenberger's allegations of employment discrimination on the basis of age, in violation of the ADEA, is GRANTED and the Ladenberger's motion for summary judgment is DENIED as to Count I of the defendant's counterclaims alleging breach of duty of loyalty and GRANTED as to Count II of the defendant's counterclaims, alleging fraud.

### Statement of Facts

Ladenberger began working for Aurora Pump, a unit of GSPG, in 1975 as an engineer. He resigned in 1982 and was rehired as the Manager of Product Development in 1988. From 1994 until his termination, Ladenberger worked in Aurora Pump's training department as a

1

Product Sales Trainer, under the direct supervision of Don Hansen ("Hansen"). As a Product Sales Trainer, Ladenberger was responsible fore training GSPG employees, distributors and outside engineers about GSPG products, for developing classes and seminars, and for making training courses available as needed. Beginning in 1995, Ladenberger and Hansen worked at Aurora Pump's Learning Development Center ("LDC"), an off-site training facility. At the time, Dick Harned ("Harned"), the Vice-President of Sales for GSPG, was responsible for the LDC.

In 1992, Ladenberger contacted Nelson Sharp ("Sharp"), the President of National Technology Transfers, Inc., ("NTT") to discuss the possibility of Ladenberger and Hansen teaching pump seminars for NTT. NTT, located in Englewood, Colorado, develops seminars on a variety of topics. In February 1995, Hansen spoke with Harned about the possibility of he and Ladenberger teaching seminars for NTT while they were employed by Aurora Pump. Hansen informed Harned that NTT would compensate Ladenberger and Hansen for their expenses.

Hansen approved Hansen's request to teach for NTT, and agreed that Aurora Pump would allow Hansen and Ladenberger time off to teach one NTT course per quarter or no more than four courses per year so long as (1) the seminars did not conflict with GSPG's yearly schedule; (2) Hansen and Ladenberger did not receive any compensation from NTT other than for travel and expenses; and (3) Hansen and Ladenberger invited Aurora Pump's distributors to each of the seminars they taught.

In February 1997, General Signal Corporation ("GSX") announced that it intended to sell GSPG. Simultaneously, Roger Montembeault ("Montembeault"), Executive Vice President of Sales and Marketing for GSPG, assumed responsibility for the LDC. As part of that process, Motembault talked to Harned to find out about the agreement Harned had made with Hansen and

2

Ladenberger. In March 1997, Montembeault turned over responsibility for the LDC to William Waltz ("Waltz"), Director of the Commercial & Industrial Business Unit for Aurora Pump.

Two months later, the Office Administrator for the LDC found a draft letter from Ladenberger to NTT's Sharp on the LDC's facsimile machine, stating "[i]n your letter you stated that you have paid us $60,000 to develop this course." Upon receiving information about the existence of such a letter, Dickens, without any additional explanation, sent a Conflict of Interest Questionnaire ("Questionnaire") to Ladenberger in order to give him an opportunity to disclose his dealings with and profits from NTT.

Waltz learned that someone in the LDC had found a business card for Professional Training Consultants ("PTC"), which listed Ladenberger and Hansen as points of contact. Additionally, Waltz learned that someone in the LDC had found an invoice that indicated that Elgin Community College had billed Sharon Pederson ("Pederson"), on behalf of PTC, to provide for food, beverages and rooms. Ladenberger and Hansen had also hired Pederson (an independent contractor) to do work for GSPG.

On June 3, 1997, Waltz wrote a memo to Montembeault and Dickens, documenting the information he had discovered regarding Ladenberger's and Hansen's dealings with NTT and PTC. On June 5, 1997, Montembeault talked to NTT's President, Sharp, about the payments NTT had made to Ladenberger and Hansen. Montembeault understood from Sharp that NTT had paid Hansen and Ladenberger $2,400 for each two-day seminar they taught, which included a $500 instructional fee and a $900 premium for developing course materials. Montembeault also understood that the $60,000 mentioned in the letter from Ladenberger to Sharp equaled the $900 premium multiplied by the number of seminars Ladenberger and Hansen had taught for NTT.

Montembeault learned from Sharp that Ladenberger had placed his own copyright notice on the manuals they prepared for NTT. Sharp followed up on his conversation with Montembeault by sending Montembeault documentation regarding Ladenberger and Hansen, including records of payments made to Ladenberger and Hansen in 1995 and 1996 and a list of seminars they had taught for NTT.

Upon speaking to Harned and GSPG's Chief Financial Officer, Montembeault decided to terminate Ladenberger's and Hansen's employment relationship with Aurora Pump due to their significant involvement with NTT. Waltz and Dickens concurred with Montembeault's decision on the basis that Ladenberger's and Hansen's dealings with NTT were a conflict of interest.

Waltz and Dickens confronted Ladenberger with the information of the extent of his involvement with NTT. Ladenberger denied having profited from his relationship with NTT, stated that he had not violated the agreement he believed Hansen and he had made with Harned, and denied the existence of PTC. Ladenberger refused to resign. Thereafter, Dickens sent Ladenberger a letter, notifying him that his employment with GSPG had been terminated because due to violations of GSX's conflict of interest policy.

At the time of Landenberger's termination, Ladenberger was 52, Montembeault was 50, Dickens was 47, and Waltz was 33.

## Standard of Review

Summary judgment may only be granted when no material question of fact is in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252, 106 S.Ct. 2505, 2511-12 (1986). The party moving for summary judgment bears the burden of identifying the evidence that demonstrates the absence of a disputed material issue of fact and establishes that the moving

party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986). The evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved and all reasonable inferences drawn in favor of the nonmoving party. Anderson, 477 U.S. at 2513. Further, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial level on the merits." Anderson, 477 U.S. at 2512. In employment discrimination cases, we apply this standard with "added rigor" before granting summary judgment. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993).

## A. Employment Discrimination Claim Against GSPG

The plaintiff argues that he has presented a prima facie case of employment discrimination on the basis of age under the McDonnell Douglas. This court disagrees and therefore grants the defendant's motion for summary judgment.

The McDonnell Douglas test requires the plaintiff to establish a *prima facie* case which creates a rebuttable presumption of age discrimination. Kendall v. C.F. Industries, Inc., 624 F.Supp. 1102, 1103 (N.D. Ill. 1986). The defendant has the opportunity to rebut the presumption by presenting evidence of a nondiscriminatory reason for discharging the plaintiff. Id. Subsequently, the plaintiff has the burden of showing that the alleged reason for the discharge was simply a pretext for age discrimination. Id.

To establish a prima facie case of age discrimination, Ladenberger must meet all four prongs of the McDonnell Douglas test. He must show: (1) that he was in the protected age group; (2) he was performing his job according to his employer's legitimate expectations; (3) he

suffered an adverse employment action; and (4) that the defendant hired someone else who was substantially younger or other such evidence that indicates that it is more likely than not that his age...was the reason for the discharge.[1] <u>Robin v. Espo Eng'g Corp.</u>, 200 F.3d 1081, 1089 (7th Cir.2000); <u>Schwietz v. Nicolet Instrument Corp.</u>, 2000 WL 1038123 (N.D.Ill. Jul 24, 2000).

In this case, it is undisputed that the plaintiff was over the age of 40 years old and discharged, thus satisfying the first and third prong of the test. The parties disagree, however, over whether the plaintiff has satisfied the second and fourth prong of the test.

The defendant argues that since it had a legitimate expectation that Ladenberger would not profit from the classes he taught for NTT or otherwise violate its conflict of interest policy, Ladenberger was not qualified for his job because he did in fact profit from the NTT classes and he did otherwise violate the conflict of interest policy.

Ladenberger asserts that he has sufficient evidence to show that he was qualified for his position regardless of GSPG's allegations that he violated its conflict of interest policy. The plaintiff argues that the receipt of satisfactory evaluations during his sixteen years of employment at GSPG adequately demonstrates his qualifications for the positions for which he was hired.

Even if this court is uncertain about whether Landenberger meets the requirements of the second prong, "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima

---

[1] While <u>Roberts v. Separators, Inc.</u>, 172 F.3d 448, 451 (7th Cir.1999) articulates the fourth requirement in a different fashion, saying that a plaintiff must show that "similarly situated, substantially younger employees were treated more favorably," In this case <u>Robin</u>'s version is more appropriate.

facie case." EEOC v. Our Lady of the Resurrection Med. Ctr., 77 F.3d 145, 149 (7th Cir.1996); Jayasinghe v. Bethlehem Steel Corp., 760 F.2d 132, 135 (7th Cir.1985) ("The prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination."). Thus, instead of weighing GSPG's' evidence in the context of the plaintiff's prima facie case, we prefer to consider it in deciding whether the defendant can establish legitimate, nondiscriminatory reasons for the firing, because the analysis often overlaps. Roberts v. Separators, Inc., 172 F.3d 448, 451 (7th Cir. 1999).

The burden now moves to the defendant to offer legitimate, nondiscriminatory reasons for firing Ladenberger. GSPG claims that they believed Ladenberger violated the company's conflict of interest policy by (1) profiting from his relationship with NTT; (2) copyrighting (what they believed to be) Aurora Pump materials in his own name; (3) charging NTT a fee for (what they believed to be) Aurora Pump materials; and (4) going beyond (what they believed to be) the initial agreement with Harned by teaching more than for four seminars per year. GSPG contends that Ladenberger was terminated on the basis of these beliefs.

Once an employer articulates legitimate, nondiscriminatory reasons for the employee's termination, the employee must present enough evidence to support a finding that the stated reasons are pretextual. Separators, Inc., 172 F.3d at 452. The "fairness or adequacy of the termination process is not relevant to the question of pretext." Sanchez v. Henderson, 188 F.3d 740, 747 (7th Cir. 1999), cert. denied, 120 S.Ct. 1201 (2000). The question is whether GSPG believed its reasons for terminating Ladenberger's employment. Sanchez, 188 F.3d 747. Thus, unlike the prima facie case, an employee's general averments that he performed adequately are

7

insufficient to create a genuine issue of fact. Id. at 378. Instead, Ladenberger must produce some independent evidence showing that the company's motives are not believable.

Towards this end, the plaintiff makes several assertions in order to demonstrate that GSPG's reason for discharging Ladenberger are merely pretext for age discrimination in violations of the ADEA. Assertions, however, are insufficient. In viewing the evidence in a light most favorable to plaintiff, even with the added rigor required in cases alleging employment discrimination, this court finds that the plaintiff has not provided the factual support necessary to establish pretext.

Initially, the plaintiff argues that GSPG could not actually have been concerned about Ladenberger's involvement with NTT because GSPG allegedly knew that several employees at Aurora Pump often left early to go to second jobs. Even if this court accepts that GSPG had such prior knowledge, the plaintiff's logic is faulty. GSPG legitimately could have conflict of interest concerns specifically related to employees working for NTT and not be concerned about its employees working for some other non-related business organization. As the plaintiff has not shown that other Aurora Pump employees held second jobs at NTT or an entity similar to NTT, this argument is untenable.

In addition, the plaintiff contends that GSPG had prior knowledge of the reasons otherwise stated for Ladenberger's termination and only invoked concern over such events in order to terminate Ladenberger. Again, however, the plaintiff does not provide the evidence necessary to either establish that a certain degree of prior knowledge existed or that a failure to act on that knowledge was due to a lack of concern. Consequently, the defendant's motion for summary judgment against the plaintiff's allegations of employment discrimination on the basis

of age is granted.

## B. Counterclaims Fraud & Breach of Loyalty Against Ladenberger

1. Count I Breach of Loyalty

Under Illinois law, an employee breaches a duty of loyalty to his employer when he takes advantage of knowledge and/or property acquired in the employer's business to make a profit for themselves at the employer's expense. Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co., 512 N.E.2d 1286, 1290-91 (Ill.App.Ct. 1987), superceded by statute on other grounds. The employee breaches this duty not only when he acts unfavorably to the employer's interests, but also when he hides facts that involve the employer's interest. Beaton, 512 N.E.2d at 1291 (citing Shinpaugh v. Midwest Life Insurance Co., 177 N.E.2d 426, 429 (Ill.App.Ct 1961).

In his motion for summary judgment, the plaintiff argues that he never conducted business, made any profits, or earned any income with PTC and therefore cannot have breached his duty of loyalty to GSPG. The testimony of Koester, however, as presented by the defendant, demonstrates that a genuine issue of material fact does exist over whether the plaintiff took advantage of GSPG services or property to make a profit.

Koester testified that Ladenberger asked Koester to pull pages from GSPG and NTT training manuals, remove any references to their copyrights, and then pass them off as PTC manuals. Koester also testified that Ladenberger frequently requested that Koester bill GSPG and use the GSPG mailroom for services she conducted for services she specifically conducted for PTC. Viewing the evidence in a light most favorable to the non-movant, in the this the

9

defendant, this court finds that the facts presented create a genuine issue of fact as to whether Ladenberger breached his duty of loyalty to GSPG.

2.   Count II Fraud

Under Illinois law, a claim of fraud can be established by proving the following elements:

(1)   a false statement of material facts;

(2)   the defendant knew or believed that the statement was false;

(3)   the plaintiff had a right to rely on the statement;

(4)   the plaintiff did rely on the statement;

(5)   the statement was made to induce the plaintiff to act; and

(6)   plaintiff's reliance led to its damages.

Cramer v. Insurance Exchange Agency, 174 Ill.2d. 513, 529 (1996). Fraud also generally includes "all acts, omissions and concealments involving a breach of duty, trust or confidence resulting in damage" to the employer. Beaton, 512 N.E.2d at 1290.

In this case, the plaintiff argues that the defendant has not provided the facts to support the essential elements of a fraud claim. Specifically the plaintiff contends that defendant has not proven that Ladenberger knew or believed that his answers to GSPG's Conflict of Interest Questionnaire were false. The defendant argues that because Ladenberger did not confess to operating PTC on the Questionnaire he must have been trying to commit a fraud against GSPG. The defendant, however, fails to offer any evidence that Ladenberger understood and believed that he was operating a business that might conflict with GSPG's business interests. Consequently, there is no genuine issue as to whether Ladenberger committed fraud against GSPG and therefore, the plaintiff is entitled to summary judgment against the defendant's

10

counterclaim of fraud.

## Conclusion

For the foregoing reasons, the GSPG's motion for summary judgment against Ladenberger's allegations employment discrimination on the basis of age, in violation of the ADEA, is GRANTED and the Ladenberger's motion for summary judgment is DENIED as to Count I of the defendant's counterclaims alleging breach of duty of loyalty and GRANTED as to Count II of the defendant's counterclaims, alleging fraud.

Enter:

David H. Coar

United States District Judge

Dated: JUN 21 2001